UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHANNON HENDRICK-WALSH,

  Plaintiff,

-against-

NYCAN BUILDERS, LLC., and NICHOLAS DESARNO.

  Defendants.

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

  Plaintiff SHANNON HENDRICK WALSH ("Plaintiff" or "Ms. Hendrick Walsh"), by and through her attorneys, FISHER TAUBENFELD LLP, complains of NYCAN BUILDERS, LLC., ("NYCAN" or the "Company") and NICHOLAS DESARNO ("DeSarno") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action is brought to challenge Defendants' practice of gender discrimination, disability discrimination, and retaliation against Plaintiff, in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended (ADAAA); and the Administrative Code of the City of New York, § 8-101 *et seq.* ("City Law").

2. Based upon the following acts and/or omissions, Defendants knowingly violated Plaintiff's rights under federal and city laws and such actions were committed intentionally and/or willfully, with knowledge that Plaintiff would be economically injured:

  a. NYCAN's hostility toward Plaintiff based on gender through unwanted remarks and inappropriate conduct;

b. NYCAN's refusal to grant Ms. Walsh reasonable accommodations for her disability, in violation of the ADAAA;

c. NYCAN's termination of Plaintiff's employment based on her disability and in retaliation for her accommodation requests, in violation of the ADAAA;

d. Defendants' hostility toward Plaintiff based on gender through unwanted remarks and inappropriate conduct, in violation of City Law;

e. Defendants' refusal to grant Ms. Walsh reasonable accommodations for her disability, in violation of City Law;

f. Defendants' termination of Plaintiff's employment based on her disability and in retaliation for her accommodation requests, in violation of City Law;

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

4. Supplemental jurisdiction over Plaintiff's City Law claims is conferred by 28 U.S.C. § 1367(a). Plaintiff was employed by Defendants in the City of New York.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) in that the Company maintains offices and conducts business in this district. Plaintiff was employed by Defendants in this district.

6. Plaintiff has satisfied all jurisdictional prerequisites under Title VII and the ADAAA. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and on May 16, 2022, received a Notice of Right to Sue.

7. Pursuant to § 8-502(c) of City Law, within 10 days of filing this complaint with the Court, Plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and on the City of New York Corporation Counsel.

## PARTIES

### *Plaintiff*

8. Ms. Hendrick Walsh is an adult individual who resides in the State of New York, County of Kings.

9. Defendants employed Ms. Hendrick Walsh as an assistant project manager from August 2021 to October 27, 2021.

10. At all times during her employment with Defendants, Ms. Hendrick Walsh was qualified for her position and carried out her job duties with diligence and care, meeting or exceeding performance expectations.

### *Defendants*

11. Upon information and belief, NYCAN is a full-service New York based Construction Management and General Contracting firm.

12. NYCAN maintains a place of business at 151 West 19th Street, 4th Floor, New York, NY 10011.

13. At all relevant times, NYCAN has continuously been doing business in the City of New York and has continuously employed fifteen (15) or more employees, and accordingly is an "employer" within the definition of the Title VII, the ADAAA and City Law.

14. DeSarno was employed by NYCAN and served as the Chief Operating Officer during Ms. Hendrick Walsh's employment.

15. DeSarno was an employer individually liable for discrimination against Ms. Hendrick Walsh under City Law, given that he had power to do more than carry out personnel decisions made by others. At all relevant times hereto, DeSarno supervised Plaintiff.

16. DeSarno recommended, participated in, or carried out the adverse actions against Plaintiff and aided and abetted in the discriminatory and/or retaliatory acts against Plaintiff.

## FACTUAL ALLEGATIONS

17. On August 30, 2021, NYCAN hired Ms. Hendrick Walsh as an assistant project manager.

18. In this capacity, Ms. Hendrick Walsh was responsible for renewing Department of Buildings permits which were about to expire and overseeing the execution of six simultaneous projects

### *Gender Discrimination Against Ms. Hendrick Walsh*

19. Throughout Ms. Hendrick Walsh's employment with Defendants, DeSarno made continuous inappropriate comments toward her.

20. On September 6, 2021, DeSarno called Ms. Hendrick Walsh into his office for a private meeting.

21. After asking her to close the door behind her, he made homophobic and inappropriately sexual comments to her, including references to purchasing oral sex from a sex worker for his father.

22. On another occasion, DeSarno called Ms. Henrick Walsh into his office and shot her under the breast with a high-powered rubber-band gun.

23. In a meeting on or around October 14, 2021, several NYCAN employees, including Controller Hugo Giraldo and CEO Nancy Erardi, shared stories and comments indicating

that DeSarno exhibited a pattern of inappropriate behavior which was tolerated and joked about in the workplace.

24. Erardi suggested creating a "waiver" for employees to sign in relation to DeSarno's frequent inappropriate comments and shared an anecdote about DeSarno referring to a client's genitalia.

25. While at work on October 6, 2021, Ms. Hendrick Walsh began to feel ill.

26. Her symptoms included sweating and a bad cough.

27. She attempted to find an urgent care facility that could see her on short notice, but was unsuccessful. She took over-the-counter flu medication and decided to see how she felt the next day.

28. On the morning of October 7, 2021, Ms. Hendrick Walsh went to an urgent care in her neighborhood to receive a COVID test and see a doctor about her symptoms.

29. At the urgent care, she was diagnosed with bronchitis and an upper respiratory tract infection. She received a doctor's note indicating that she should stay home for two days.

30. Ms. Hendrick Walsh contacted Giraldo, Erardi, and DeSarno to inform them of her illness.

31. Despite still feeling under the weather, Ms. Hendrick Walsh returned to work on October 11, 2021.

32. Erardi requested that she take a rapid COVID test and provided her with a test kit to do so. Her test result was negative.

33. On the morning of October 15, 2021, Ms. Hendrick Walsh's condition had still not improved.

34. She informed Erardi and Giraldo that she was returning to the doctor that day with the intent of receiving a chest x-ray.

35. At the doctor, Ms. Hendrick Walsh was diagnosed with severe bronchitis and walking pneumonia, and was prescribed a nebulizer, azithromycin, and prednisone as treatment.

36. She informed Giraldo that her healthcare provider told her to "take it easy," to which Giraldo replied, through text message, "I guess you aren't coming in." Ms. Hendrick Walsh confirmed.

37. Ms. Hendrick Walsh returned to the office on October 18, 2021, with her nebulizer, which Giraldo requested she only use in a conference room.

38. On October 22, 2021, Erardi told Ms. Hendrick Walsh on the phone that her cough sounded worse, to which Ms. Hendrick Walsh responded that she had plans to see her doctor that weekend.

39. On October 23, 2021, upon arriving at the doctor, Ms. Hendrick Walsh's blood pressure reading was alarmingly high; she recalls that it was unmeasurable by the machine, above 200/100.

40. She also discovered that she had lost 10 pounds over the course of her illness.

41. Once a nurse was able to reduce her blood pressure to safer levels, Ms. Hendrick Walsh's doctor informed her that she had developed full-blown asthma and recommended strict bed rest and no work from October 23, 2021, to October 28, 2021.

42. By text message, Ms. Hendrick Walsh promptly informed DeSarno and Erardi of her doctor's orders and sent a copy of the doctor's note while indicating that she could work from her laptop in bed.

43. She also informed three coworkers via email and phone about her diagnosis.

44. That evening, Erardi responded to say that working from home was not possible, and that any days Ms. Hendrick Walsh needed to take off would be deducted from her paid time off bank.

45. Ms. Hendrick Walsh's job could have easily been done from home. She was able to work on her laptop and respond to emails.

46. On October 27, 2021, Ms. Hendrick Walsh was on the way to an appointment with an ear, nose, and throat specialist when she received an email from Erardi terminating her employment with NYCAN.

47. Erardi did not provide a reason for the termination, but simply stated that Ms. Hendrick Walsh was an at-will employee for whom no reason was necessary.

48. Former coworkers informed Ms. Hendrick Walsh that Erardi had called a meeting that day to tell employees that Ms. Hendrick Walsh had left the company, stating that employees were not to speak with or attempt to contact Ms. Hendrick Walsh on threat of termination.

49. DeSarno allegedly insinuated in the meeting that Ms. Hendrick Walsh's termination was related to drug use.

50. Erardi's subsequent communications with Ms. Hendrick Walsh were hostile and uncooperative, culminating in a retaliatory cease and desist letter Erardi sent on November 1, 2021.

**FIRST CAUSE OF ACTION**
*Gender Discrimination Under Title VII*
*(Against NYCAN)*

51. Plaintiff repeats and realleged all paragraphs above as though fully set forth herein.

52. By the acts and practices described above, NYCAN intentionally discriminated against Plaintiff based on her gender in violation of Title VII.

53. As a proximate result of NYCAN's unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## SECOND CAUSE OF ACTION

*Gender Discrimination Under City Law*
*(Against All Defendants)*

54. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

55. By the acts and practices described above, Defendants intentionally and willfully discriminated against Plaintiff on the basis of her gender, in violation of City Law.

56. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## THIRD CAUSE OF ACTION
*Refusal to Provide Reasonable Accommodations*
*and Discriminatory Termination*
*in Violation of the ADAAA*
*(Against NYCAN)*

57. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

58. Plaintiff suffered from a disability and requested reasonable accommodations for her disability.

59. By the acts and practices described herein, NYCAN violated the ADAAA by refusing to accommodate Plaintiff's disability and by terminating Plaintiff based on her disability.

60. NYCAN's acts were willful and intentional.

61. As a proximate result of NYCAN's unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation, and substantial losses in past and future earnings and other fringe benefits.

**FOURTH CAUSE OF ACTION**
*Refusal to Provide Reasonable Accommodations
and Discriminatory Termination
in Violation of City Law
(Against All Defendants)*

62. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

63. Plaintiff suffered from a disability and requested reasonable accommodations for her disability under City Law.

64. By the acts and practices described herein, Defendants violated City Law by refusing to accommodate Plaintiff's disability and terminating Plaintiff based on her disability.

65. Defendants' acts were willful and intentional.

66. As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation, and substantial losses in past and future earnings and other fringe benefits.

## FIFTH CAUSE OF ACTION
*Retaliation in violation of the ADAAA*
*(Against NYCAN)*

67. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

68. By the acts and practices described above, NYCAN retaliated against Plaintiff by terminating her employment because she requested an accommodation for her disability.

69. NYCAN knew that its actions constituted retaliation and willfully disregarded Plaintiff's statutorily protected rights.

70. As a proximate result of NYCAN unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## SIXTH CAUSE OF ACTION
*Retaliation in Violation of City Law*
*(Against All Defendants)*

71. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

72. By the acts and practices described above, Defendants retaliated against Plaintiff by terminating her employment because she requested an accommodation for her disability.

73. Defendants knew that their actions constituted retaliation and willfully disregarded Plaintiff's statutorily protected rights.

74. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation

and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment awarding on Plaintiff's Causes of Action:

i. back pay, prejudgment interest, front pay, penalties, and damages for all employment benefits Plaintiff would have received but for the unlawful acts and practices of Defendants;

ii. compensatory damages;

iii. punitive damages;

iv. reasonable attorneys' fees and costs incurred in this action; and

v. any other relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated: August 8, 2022
New York, New York

_____
Liane Fisher, Esq.
FISHER TAUBENFELD LLP
*Attorneys for Plaintiff*
225 Broadway, Suite 1700
New York, New York 10007
(212) 571-0700